A. MAX v. BETTIE HARRIS, Administratrix of H. Y. Harris.

(Decided December 5, 1899.)

*Agency for Sale of Goods—Removal of Cause Affecting Land.*

1. Where an agent for sale of goods gives a note and mortgage to secure his contract, and is sued for a breach thereof, but no remedy is asked upon the mortgage and none is given, the action is properly brought in the county where the plaintiff resides, although the land is in another county, where the defendant resides. A removal of the cause to the latter county was properly refused.

2. Where the agent was an experienced salesman, and selected the goods himself, with privilege of returning such as were unsaleable, and there was no evidence of latent defects, he was not entitled to damages by way of counterclaim for unsaleable goods, not returned.

CIVIL ACTION for breach of contract in failing to pay for goods, sold by defendant as agent of plaintiff, tried before *Bryan, J.*, at March Term, 1899, of the Superior Court of DURHAM County.

The plaintiff resided in Durham County, the intestate of defendant resided in Orange County, and to secure his contract, he and his wife, Bettie Harris, gave a mortgage to plaintiff on a tract of land in Orange County, also a note for $1,000. At March Term, 1898, the defendant demanded a removal of the cause for trial to Orange County in consequence of the mortgage. The presiding Judge, *Robinson,* refused the removal, and defendant excepted.

The answer contained a counterclaim for damages occasioned by the plaintiff furnishing unsaleable goods to the defendant, and denied any indebtedness to plaintiff.

*Issues.*

1. Is the defendant indebted to the plaintiff, if so,.in what amount?    Answer.    "$300 and interest."

2. Is the plaintiff indebted to the defendant, if so, in what amount?    Answer. "Nothing."

There was no exception to the evidence, which is stated in the opinion.

His Honor charged the jury as follows:

In this action, the plaintiff seeks to recover of the defendant, as administratrix of H. Y. Harris, a balance due, as he claims, for goods.    He contends the amount is $373.32, and the defendant sets up a counterclaim and claims damages, which she in her evidence says was as much as $500.    The Court will submit to you two issues, as follows:    (His Honor then read the issues set out in the record).

The contention of the plaintiff is that he sold certain goods to H. Y. Harris; that Harris selected the goods he wanted and is liable to him for what he agreed to pay for them; that he had the privilege of returning the goods, and that he failed to do it, and that therefore he is liable for the balance due, which he contends is $373.32, with interest from March 18, 1896.

The contention of the defendant is that Harris bought certain goods, by sample; that he did not receive such goods as he bought; that the goods were inferior goods; that he could not make sales; that some of the goods were returned to his store; that the plaintiff refused to take barter,as he had agreed to do; that had the plaintiff furnished fresh goods and taken barter, the defendant could have conducted a successful business and made money, and that by reason of such failure he was damaged to a large amount.

The exception of defendant to this portion of the charge is stated in full in the opinion.

His Honor continued:

But if Harris, notwithstanding the goods were not such as he bought, kept them and continued to dispose of them, rather than return them to plaintiff, then the damages on this point would be nothing.

The exception of defendant to this portion of the charge is also fully stated in the opinion.

His Honor rendered judgment for the plaintiff in accordance with the verdict.

Defendant excepted and appealed.

*Mr. J. W. Graham,* for appellant.
*Messrs. Boone, Bryant & Biggs,* for appellee.

DOUGLAS, J.     The defendant in this action, H. Y. Harris, died during its pendency and his administratrix, Bettie Harris, his wife, became a party to the action.     It appears from the record that one Summerfield was also brought into the action as administrator of H. Y. Harris, but he does not appear to have done anything further, as Mrs. Harris appears to have been thereafter recognized alone as sole administratrix.     On March 14, 1896, H. Y. Harris entered into a contract with the plaintiff, the material parts of which are as follows:

"Whereas, the said A. Max has agreed to constitute the said H. Y. Harris his agent for the sale of goods and general merchandise at Caldwell Institute, N. C., and to furnish to the said H. Y. Harris one thousand dollars worth of goods, fresh general merchandise, at wholesale cash prices, in Durham, N. C., and the said H. Y. Harris contracts to dispose of said goods as the agent of said Adolph Max, and the title to said goods as between the said H. Y. Harris and A. Max, shall remain in the said A. Max until the said goods shall have been *bona fide* sold by the said H. Y. Harris as such

agent.    And the said H. Y. Harris as such agent shall faith-fully and honestly endeavor to pay to the said A. Max as much as $25.00 a week in cash and barter, and if he shall be able to accomplish the same and his said payments shall amount to as much as $25.00 per week, continuously, until the principal money due for the goods consigned to said H. Y. Harris, agent, shall be fully paid, then no interest will be charged on such principal money, and any profit on the goods, over and above the principal money due therefor, shall be turned over to said H. Y. Harris, as compensation for his services as said agent.    But if the said H. Y. Harris is not able to pay $25.00 per week, continuously, until the principal money is fully paid, then he shall pay interest on said prin-cipal money at 6 per cent from the date when said goods and merchandise shall be conveyed to him, and the payment made by the said H. Y. Harris on the note taken as evidence of the goods furnished him as agent, will be allowed with interest from the date of each payment.    The said A. Max will allow to the said H. Y. Harris, agent, the cash price in the first-class Durham stores for all the barter delivered to him by the said H. Y. Harris, agent, in payment for the stock of goods furnished to him.    That if any time the said A. Max or H. Y. Harris, agent, desires to discontinue the business, the said A. Max will accept from H. Y. Harris, agent, any goods not sold or disposed of as payment on the note given for the purchase of goods by H. Y. Harris, agent, at the same price they were sold to said H. Y. Harris, agent, unless they shall be injured or damaged, and at market value on seasonable goods.    This agency to continue as long as agreeable to both parties, and either one to have the right to dissolve at any time he may wish.    The said A. Max agrees to replenish the stock if payments are made, so that at no time shall the said H. Y. Harris, agent, be due and owing more than the original

amount advanced in goods to him as agent. And the said H. Y. Harris agrees to take the goods to Caldwell Institute and retail them for cash and barter, and to pay over to A. Max the proceeds of said sale, which he will endeavor to make as much as $25.00 per week until he has fully paid and discharged the entire amount due to A. Max, at the expiration of the time named in the bond. The said H. Y. Harris is to pay off the bond in full if demanded in cash, barter, or goods returned at the price at which they were furnished, unless injured or damaged, when proper deduction will be made; or if either shall desire a settlement before that time the business will be closed in the same manner on the demand made thirty days before."

The remainder of the agreement constituted a mortgage on certain lands in Orange County to secure payment for the goods. Harris also gave to the plaintiff his note for $1,000, in pursuance of the agreement. The defendant demanded the removal of this action to Orange County on the ground that the object of the action was in reality a foreclosure of mortgage on real property, and for a determination of a right and interest in real property situated in the county of Orange. The motion was refused, and the defendant excepted. All her remaining exceptions are directed to the charge of the Court.

The defendant denied any indebtedness to the plaintiff, and set up a counterclaim alleging serious damage from the plaintiff's failure to furnish such goods in value and quality as he had agreed. The defendant asked no special instructions, but contented herself with indicating in her exceptions what she thinks the charge should have contained. The following exceptions show the scope of her contentions:

*Second Exception.*—"To this statement of contention defendant excepts, as his Honor should have told the jury that

defendant claimed the relation of mortgagee and mortgagor existed under the written contract introduced by plaintiff; that defendant was the agent of plaintiff, and to be furnished with fresh general merchandise upon which he could have hoped to make a reasonable profit, and that he was prevented from doing so by the acts and conduct of plaintiff, who palmed off upon him a lot of shoddy, shelf-worn, stale goods, and destroyed the trade which defendant had built up and could have maintained, if furnished with goods such as he had a right to expect under the contract, but being in the power and under the control of plaintiff, he was forced to take what he could get."

*Fourth Exception.*—"To this the defendant excepts, as Harris, under the contract, was entitled to what reasonable profit he could have made on a lot of fresh general merchandise, as would attract purchasers, to be furnished by plaintiff to the amount of $1,000, and kept supplied up to that amount so that defendant could keep and hold such trade as he had obtained."

*Fifth Exception.*—"To this defendant excepts, and says that the same is erroneous, and that instead thereof his Honor should have told the jury, 'the buyer may always retain the goods and maintain an action for damage sustained by the supply to him of an unmarketable article or something different in character to that which he agreed to buy, or which by the contract the plaintiff was to furnish, and had a right to waive the breach of contract and wait until the other party sued him, and then assert by way of counterclaim or cross-action.'"

The other exceptions are substantially similar.

The defendant's contentions were clearly presented to us, and ably argued, but we do not think they are supported by the facts shown in the record. We think the motion for

MAX *v.* HARRIS.

removal was properly refused, as we do not see how the present action affects in any way the land in Orange County. It does not ask a foreclosure. The mortgage, which is a compound document of peculiar construction, is introduced simply for the sake of the contract, and is not referred to in the judgment. The question of its validity as a mortgage is not involved in this action.

We think that the defendant's remaining contentions are equally untenable. The evidence shows that Harris was 48 years old, had been a merchant all his life, and personally selected nearly all the goods which he bought. A few shoes were bought by sample, but there is no evidence that these particular shoes did not come up to sample. In any event that point is properly presented in the charge.

We might not be disposed to question the defendant's view of the law as to latent defects if any latent defects had been proved, but the very contention of the defendant is that the plaintiff "palmed off upon him a lot of shoddy, shelf-worn, stale goods." These were all patent defects that might readily have been discovered upon examination by a merchant of such long experience as Harris when he selected the goods.

There are some portions of his Honor's charge which, standing alone, might be liable to objection, but, taken as a whole, we think it is substantially correct, and contains a fair presentation of the case.

Affirmed.